## PINEIRO v. GURNEY.

*(Supreme Court, General Term, First Department. June 26, 1891.)*

1. PARTNERSHIP—NOTICE OF DISSOLUTION—DISBURSEMENTS OF AGENT.

Plaintiff acted as agent for a domestic firm in paying port charges and making disbursements to vessels chartered by the firm at a foreign port. The firm was dissolved, and notice thereof sent to plaintiff. *Held*, that defendant, sole surviving member of the firm, was liable for a disbursement for port charges made by plaintiff before receipt of notice of dissolution of the firm, though not made in strict accordance with his authority, the firm having received the benefit thereof; but that defendant was not liable for the port charges of a vessel paid by plaintiff chartered by him without authority prior to the dissolution, nor for payments made in violation of instructions after notice of dissolution, though afterwards ratified by the other members of the dissolved firm, continuing the business in the same firm name.

2. SAME—RIGHTS OF RETIRING PARTIES.

In such case a draft for £100 remitted to plaintiff by the members of the new firm, who had assumed all the indebtedness of the old firm on its dissolution, should have been credited to the item for which defendant was bound as a member of the old firm.

Appeal from circuit court, New York county.

Action by Modesto Pineiro against Richard Gurney. From a judgment for plaintiff, defendant appeals.

Argued before VAN BRUNT, P. J., and BARRETT and PATTERSON, JJ.

*Henry D. Hotchkiss*, for appellant. *Hobbs & Gifford*, for respondent.

BARRETT, J. The plaintiff is a merchant doing business at Santander, in Spain. The defendant, Gurney, is the sole surviving member of the firm of Ruger Bros. & Co., who were formerly shipping merchants in this city. The action was brought to recover a balance of £234. 2s. 1d., which the plaintiff claimed to be due him by Ruger Bros. & Co. He had acted as the agent of this firm at Santander for some time prior to its dissolution, paying port

charges and disbursing vessels which the firm had chartered for out and home voyages. The substantial dispute arises with regard to disbursements made by the plaintiff subsequent to the dissolution of the firm, and there is also a dispute with regard to the proper application of a payment made after such dissolution. The firm was dissolved upon the 14th day of June, 1883; Gurney retiring, and the Rugers continuing the business. The plaintiff received notice of the dissolution upon the 30th of the same month. The notice informed him that Gurney had retired from the firm, and that the business would be "carried on again" by William and Emil Ruger "under the former firm of Ruger Brothers." There are three items in the account to which special objection is now taken by Gurney. We will deal with them *seriatim.* The first is a sum of £101. 11s. 5d., paid by the plaintiff on the 23d day of June, 1883, for port charges on account of a vessel called the "Arcturus," which had been chartered by the late firm some time prior to its dissolution. We think this item was properly allowed to the plaintiff, for the reason that when he made the payment he had not yet learned of the dissolution of the firm, and, although the payment was not in strict accordance with his instructions, it was a payment made for the benefit of the firm, and by which it profited. The second item is a sum of £35. 10s. 1d., paid by the plaintiff on the 9th day of July, 1883, for port charges on account of a vessel called the "Kennard." This vessel was also chartered prior to the dissolution of the firm. The payment, however, was made without any instructions or authority whatever. The plaintiff was not the general agent of the firm. He was specially employed, and received distinct instructions, with regard to each vessel. And, further, he acknowledged in his letter to the firm of July 9, 1883, that he made the payment without orders. He did this after he had received notice of Gurney's withdrawal. It was, of course, competent for the new firm to ratify this payment, and to bind themselves therefor; but they could not bind Gurney, who no longer had any interest in the transactions of the old firm. According to Gurney's uncontradicted testimony, the Rugers were to "liquidate all outstanding matters; to receive all amounts that were coming in, and pay out what was due, and to leave all that was outstanding." It is true that the plaintiff was not informed of the terms of dissolution; but when, with notice of the fact, he ventured to make payments without authority, he certainly took the risk of their ratification by all parties. This item should not, in our judgment, have been allowed to the plaintiff as against Gurney. The third item is a similar payment of £15. 3s. 6d., made on account of a vessel called the "William Phillips." This payment should also have been disallowed. It was made on the 31st of July, 1883, over a month after the plaintiff had been notified of the dissolution; and it was made in disregard of instructions. The instructions were, in case the amount intrusted by the firm to the captain was insufficient to pay the port charges, "to take an advance on the homeward freight for the balance." Finding that this advance could not be obtained, the plaintiff paid the deficiency himself, and charged it to the firm in his account. This was unauthorized, and the plaintiff could not thus bind Gurney after notice of dissolution. His doing so was in conflict with the orders given while Gurney was yet a member of the firm, and if those orders had been obeyed the advance would have been a lien upon the freight, and would have been settled upon the arrival of the vessel at this port. It was well enough for the Rugers, who were "to receive all amounts that were coming in," to ratify this payment; for it was immaterial to them whether they repaid the port charges to the plaintiff, or repaid advances to an equivalent amount upon the homeward freight. Indeed, upon the principle already suggested with regard to the Arcturus, the firm would have been liable for this payment, as it was made for its benefit, and it profited thereby. But this principle would certainly not apply to Gurney after notice of dissolution.

The remaining question is as to a credit of £100, of date October 27, 1883. It was disallowed to Gurney, and applied to the indebtedness incurred by the Rugers after the dissolution. This, we think, was erroneous. By the very terms of the letter in which it was remitted, the Rugers speak of the drafts as "further on account." The plain intention was to apply it on the general account, there being no break between the firms of Ruger Bros. & Co. and Ruger Bros. In fact, the business went right on as before. The Rugers, as we have seen, had assumed all the outstanding affairs of the old firm, and had agreed to pay its debts. They simply continued the business, and there was but one account, namely, that represented by the bill of particulars in this case. We are not altogether satisfied with the disposition made of certain other items of the account; but as the allowance to Gurney of this credit of £100 and the disallowance of the second and third items of debt suffice to wipe out the balance allowed by the trial court, we need not consider the case further. The judgment appealed from should be reversed, and a new trial ordered, with costs to abide the event. All concur.